IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATE OF AMERICA, | ) |
| vs. | ) Criminal No. 19-203 |
| KEVIN WATSON, | ) |
| Defendants. | ) |

AMBROSE, Senior District Judge

## OPINION

Defendant, Kevin Watson, is charged with: possession with intent to distribute 400 grams or more of fentanyl and 100 grams or more of heroin in violation of 18 U.S.C. § 841(a)(1), (b)(1)(A)(vi), and (b)(1)(B)(i). [ECF No. 53]. These charges followed a stop of the vehicle driven by Defendant on April 26, 2019, by the Pennsylvania State Police.

Defendant moves to suppress evidence seized in connection with the traffic stop, a search of Defendant, and the search of the vehicle Defendant was driving. [ECF No. 152]. A hearing was held on May 17, 2021, supplemental argument was held on June 3, 2021, and all briefing was completed on June 11, 2021.

## Findings of Fact

1. Trooper Dillon Burkarth has been employed by the Pennsylvania State Police for four years.

2. Burkarth serves in a patrol unit responsible for traffic enforcement and responding to emergency calls.

3. Burkarth received specialized training, including training on highway interdiction, DUI enforcement, and criminal investigations.

4. On April 26, 2019, Burkarth was assigned to patrol in an area within the Pennsylvania State Police station in Kittanning.

5. On that date, Burkarth was working a 1:00 p.m. to 9:00 p.m. shift.

6. At around 8:30 p.m. on April 26, 2019, while the sun was setting, Trooper Burkarth was monitoring Route 28 northbound traffic from a marked car in a stationary position in the center median.

7. The patrol car was perpendicularly facing the northbound, parallel lanes of Route 28.

8. The posted speed limit on the roadway was 55 m.p.h.

9. Traffic was traveling on Route 28 at least 40 m.p.h. at the time.

10. Defendant, operating a Lincoln Continental and travelling northbound on Route 28, passed Burkarth's position.

11. Burkarth's patrol car's dashboard camera captured Defendant's vehicle as it moved past Burkarth's stationary position.

12. Burkarth observed Defendant's car and that it had extremely dark tint on the windows of the driver's side front and rear doors as well as on the rear windshield.

13. Burkarth was unable to see through the car's windows.

14. Having overly tinted windows is a violation of the Pennsylvania Vehicle Code. See 75 Pa. Const. Stat. § 4524.

15. Burkarth left his stationary position and began following Defendant in his patrol car.

16. As he followed Defendant, Defendant's rear windshield continued to appear overly tinted to Burkarth.

17. Burkarth then turned on his overhead lights and siren and initiated a traffic stop.

18. Defendant pulled over on Route 28, eventually stopping near the Exit 10 on-ramp.

19. Burkarth exited his patrol car and approached Defendant's driver's side window.

20. Once there, as captured on the video recording, Burkarth articulated his specific reason for stopping Defendant: "The reason I'm stopping you is for your window tint. … You can't see inside of them."

21. The window tint was Burkarth's only reason for initiating the traffic stop.

22. Eventually Watson fled the traffic stop, led police on a high speed chase, and crashed his car into a utility pole.

23. Defendant's car was later secured in the Kittanning Barracks impound lot.

24. Measurements at the impound lot showed the window tint at 16 percent light transparency.

25. 16 percent light transparency is beyond the legal limit under the Pennsylvania Vehicle Code.

26. Pennsylvania State Police troopers searching Watson's car found evidence, including more than 300 bricks of a heroin/fentanyl mixture. Police seized this evidence pursuant to a search warrant obtained after Burkarth stopped Defendant's vehicle.

Defendant contends that Burkarth's stop of the vehicle that Defendant occupied was conducted without reasonable suspicion that Defendant's windows were overly tinted, and, therefore, any evidence seized from either Defendant or the Lincoln Continental must be suppressed as fruits of the initial police pursuit and stop of both Defendant and the car that he operated at the time. I disagree.

## Conclusions of Law

1. Burkarth's stop of Defendant's car on April 26, 2019 was in response to Defendant's violation of the Pennsylvania Vehicle Code and, therefore, legal.

2. Burkarth had specific, articulable facts to reasonably believe that Defendant's windows were overly tinted in violation of the Pennsylvania Vehicle Code.

3. Burkarth conducted a valid stop based on reasonable suspicion the Defendant had violated the law on April 26, 2019 under the totality of the following circumstances:

    a. Defendant's vehicle, travelling northbound on Route 28, passed Burkarth's position.

    b. Burkarth observed Defendant's car and that it had extremely dark tint on the windows of the driver's side front and rear doors as well as on the rear windshield.

    c. Burkarth was unable to see through the car's windows.

    d. After Burkarth left his stationary position and began following Defendant's vehicle, Defendant's rear windshield continued to appear overly tinted to Burkarth.

    4. The totality of all the information Burkarth possessed established reasonable suspicion that Defendant's windows were overly tinted in violation of the Pennsylvania Vehicle Code.

    5. Burkarth's testimony that he was able to observe the window tint on Defendant's vehicle at the time in question is credible.

    6. Burkarth lawfully stopped the vehicle Defendant was driving because he had reasonable suspicion that the car's windows were overly tinted.

    7. The evidence seized after Defendant's arrest and pursuant to the warrant obtained after the stop will not be suppressed as fruit of the poisonous tree or otherwise.

    BY THE COURT:

    s/ Donetta W. Ambrose
    Donetta W. Ambrose
    United States Senior District Judge

Dated: 7/7/2021