# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 19-203 |
| ) | |
| KEVIN WATSON ) | |

## MEMORANDUM OPINION

Presently before the Court are the following Pretrial Motions filed by *pro se* Defendant Kevin Watson: Motion to Dismiss Superseding Indictment as Untimely; Request for Notice of the Government's Intent to Use Evidence; Motion to Produce Pursuant to Rule 26.2; Motion to Dismiss for Violation of *Brady* Rule; and Motion to Dismiss Indictment as Unconstitutional as Applied Pursuant to Rule 12(b).  (Docket Nos. 388-392).  The Government filed an Omnibus Response in opposition to Defendant's Pretrial Motions.  (Docket No. 396).  Defendant then filed an Omnibus Reply, and the Government filed a Sur-reply.  (Docket Nos. 398, 400).  After careful consideration of the parties' positions, Defendant's Pretrial Motions will be denied.

### I.   BACKGROUND

On June 26, 2019, Defendant was charged in a one-count Indictment with possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(i). (Docket No. 1).  The charge arose as a result of an incident that occurred on April 26, 2019, when Defendant allegedly fled from law enforcement and led police on a high-speed chase following a traffic stop.  (Docket No. 49 at 3-5).  After Defendant crashed his vehicle, he exited the car, fled on foot, and abandoned a very young child in the car.  (*Id.* at 6).  Defendant

ultimately was apprehended. (*Id.*). The police subsequently searched Defendant's vehicle and found approximately 300 bricks of suspected heroin. (*Id.* at 7).

On October 15, 2019, Defendant was charged in a one-count Superseding Indictment with possession with intent to distribute 400 grams or more of fentanyl and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi) and 841(b)(1)(B)(i). (Docket No. 53). On December 10, 2019, the Government filed an Information pursuant to 21 U.S.C. § 851, stating that Defendant has prior convictions as a basis for increased punishment. (Docket No. 79).

Following a jury trial before Judge Ambrose in November 2021, Defendant was found guilty as charged in the Superseding Indictment. (Docket No. 286). After Judge Ambrose assumed senior inactive status, Defendant's case was reassigned to this member of the Court in January 2022. Ultimately, in April 2023, this Court sentenced Defendant to 240 months' imprisonment followed by a 10-year term of supervised released. (Docket Nos. 329, 331). Defendant subsequently appealed his judgment of conviction to the Third Circuit Court of Appeals. (Docket No. 334).

On July 9, 2024, the parties filed in the Third Circuit a joint motion for summary remand wherein the Government conceded that one of Defendant's issues raised on appeal had merit – that is, the District Court admitted certain cross-examination of Defendant's former attorney, as well as closing argument concerning same, in violation of Federal Rule of Evidence 403. As a result, the parties agreed that Defendant is entitled to a new trial.

On remand to this Court, Defendant initially was represented by the Federal Public Defender's Office, but he ultimately moved to proceed *pro se*, which the Court granted following

a hearing. (Docket Nos. 356, 367, 379, 381, 382). Defendant subsequently filed the Pretrial Motions which are presently before the Court.

## II. DEFENDANT'S PRETRIAL MOTIONS

### A. Motion to Dismiss Superseding Indictment as Untimely (Docket No. 388)

Defendant's alleged conduct which gave rise to the charge in the Indictment occurred on April 26, 2019, and he was arrested on that date and charged in a state criminal complaint. (Docket Nos. 49 at 3-5; 400 at 2). He was federally indicted on June 26, 2019, and the Superseding Indictment was filed on October 15, 2019. (Docket Nos. 1, 53). In his Motion to Dismiss the Superseding Indictment as Untimely, Defendant argues that both the original Indictment and the Superseding Indictment were untimely because they were not filed within 30 days of his arrest. (Docket No. 388, ¶¶ 1-4). Defendant appears to base his argument on both the Speedy Trial Act and the statute of limitations. (*See id.*, ¶¶ 5, 6) (stating that the Speedy Trial Act sets forth a 30-day limitation on filing an indictment; also referencing the statute of limitations); (*see also* Docket No. 398 at 1, ¶¶ 1, 2) (referencing the Speedy Trial Act; also contending that both Indictments were not filed within the statute of limitations). Under either theory, Defendant is incorrect that the Indictment and the Superseding Indictment were untimely filed.

As to Defendant's Speedy Trial Act argument, it bears repeating that following his arrest on April 26, 2019, he initially was charged in a *state* criminal complaint. The *federal* Speedy Trial Act requires that a defendant be charged within 30 days of his arrest on *federal* charges.[1] *See* 18

---

[1] To be clear, a federal felony may initially be charged by complaint, *see* Fed. R. Crim. P. 3, and then an indictment or information must be filed within 30 days of the arrest on such complaint in order for the felony charges to proceed. *See* 18 U.S.C. § 3161(b). Here, it is important to emphasize that Defendant was not federally charged by way of a criminal complaint, thus the 30-day indictment requirement that Defendant appears to rely upon in advancing his untimeliness argument is inapplicable.

3

U.S.C. § 3161(b) ("Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."). Here, Defendant ignores that the Speedy Trial Act's 30–day clock only begins to run at the start of *federal* detention. Because Defendant's April 26, 2019 arrest was on state charges, it did not trigger § 3161(b). *See United States v. Crews*, 494 F. App'x 240, 243 (3d Cir. 2012) (citing *United States v. Mills*, 964 F.2d 1186, 1189-90 (D.C. Cir. 1992) (noting "the undisputed rule that a *state* arrest does not trigger the Speedy Trial Act's clock, even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense") (emphasis in original)); *United States v. Rose*, 365 F. App'x 384, 389 (3d Cir. 2010) ("The state arrest and state prosecution do not control the speedy trial analysis because the state and federal governments are separate sovereign entities, and the actions of one cannot typically bind the other.").

Further, contrary to Defendant's contention, the filing of the Superseding Indictment on October 15, 2019 did not violate the Speedy Trial Act. In *United States v. Komolafe*, 246 F. App'x 806 (3d Cir. 2007), the Third Circuit Court of Appeals concluded that "superseding indictments filed longer than 30 days after an arrest which add charges to those contained in the original indictment do not violate the Speedy Trial Act." *Id.* at 809. In this case, the Indictment charged Defendant with possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(i), whereas the Superseding Indictment charged him with possession with intent to distribute 400 grams or more of fentanyl and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi) and 841(b)(1)(B)(i). (Docket Nos. 1, 53). Given that the Superseding Indictment charged Defendant with possessing with intent to distribute

4

fentanyl in additional to heroin, no Speedy Trial Act violation occurred, and Defendant's untimeliness argument lacks merit.

Moving on, to the extent Defendant premises his argument that both the original Indictment and the Superseding Indictment were untimely because they were not filed within the statute of limitations, he likewise is incorrect. The Government filed both the Indictment and the Superseding Indictment well within the applicable 5-year statute of limitations.[2] *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.").

Finally, to the extent Defendant once again seeks dismissal of the Superseding Indictment pursuant to *United States v. Grady*, 544 F.2d 598 (2d Cir. 1976), no such relief is warranted. According to Defendant, the Superseding Indictment "materially and substantially broaden[ed] the original Indictment." (Docket No. 388, ¶ 7). As Judge Ambrose previously ruled, Defendant misreads *Grady*, in which the Second Circuit Court of Appeals "addressed the interplay of an indictment and the statute of limitations." (*See* Docket No. 244 at 9) (citing *Grady*, 544 F.2d at 601). As just discussed, the Superseding Indictment was filed well within the statute of limitations, thus *Grady* is inapplicable.[3]

---

[2] The conduct underlying the charges in this case occurred on April 26, 2019. Thus, the 5-year statute of limitations expired on April 26, 2024. The Indictment was filed on June 26, 2019, and the Superseding Indictment was filed on October 15, 2019 – just months after the offense conduct occurred and both well within the 5-year statute of limitations, as Judge Ambrose explained in connection with a ruling denying Defendant's previously filed Motion to Dismiss Superseding Indictment. (*See* Docket No. 244 at 9).

[3] In connection with his *Grady* argument, Defendant also cites *United States v. Friedman*, 649 F.2d 199 (3d Cir. 1981) and *United States v. Oliva*, 46 F.3d 320 (3d Cir. 1995). Like *Grady*, *Friedman* and *Oliva* discuss the interplay between the statute of limitations and an indictment and/or superseding indictment. As such, both *Friedman* and *Oliva* are inapplicable.

5

For all of the foregoing reasons, Defendant's Motion to Dismiss the Superseding Indictment as Untimely will be denied in its entirety.

### B. Request For Notice of the Government's Intent to Use Evidence (Docket No. 389)

In Defendant's Request for Notice of the Government's Intent to Use Evidence, he requests the names of any expert witnesses the Government intends to call at the retrial and any evidence it intends to introduce that was not used in the first trial. (Docket No. 389, ¶ 3). In support of this request, Defendant cites Rule 12(b)(4)(B), which provides, "[a]t the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4)(B).

At this juncture, the Government represents that it has not identified any additional information subject to disclosure under Rule 12(b)(4)(B) that it intends to use at Defendant's retrial. (Docket No. 396 at 6). The Government submits that it has complied with all of its discovery obligations to date, and it will continue to do so. (*Id.*). Furthermore, if the Government becomes aware of any additional information or evidence that it intends to present in its case-in-chief at the retrial, it will immediately notify Defendant and provide the material if it has not already been provided. (*Id.*). Given the Government's response, Defendant's request for evidence the Government intends to introduce at the retrial that was not used in the first trial will be denied as moot.

As for Defendant's request pertaining to expert witnesses, the Government submits that it is in the process of determining what, if any, additional expert testimony it intends to present at

6

the retrial. (Docket No. 396 at 6). If the Government determines that different or additional expert testimony will be required for Defendant's retrial, it will prepare a written expert disclosure in accordance with Rule 16(a)(1)(G) and will produce the same as required by the Court's future pretrial order.[4] (*Id.*). Consequently, Defendant's request concerning expert witnesses is premature, and it will be denied as such.

### C. Motion to Produce Pursuant to Rule 26.2 (Docket No. 390)

In Defendant's Motion to Produce Pursuant to Rule 26.2, he seeks production of "statements of individuals who testified at trial who also made statements to the grand jury." (Docket No. 390, ¶ 7). In response, the Government represents that its grand jury witnesses (for both the Indictment and the Superseding Indictment) did not testify at Defendant's November 2021 trial, and therefore the relevant transcripts were not produced because they do not constitute Jencks material. (Docket No. 396 at 7). The Government notes that it otherwise generally construes Defendant's Motion to Produce as a request for early production of Jencks Act materials. (*Id.*, n.4). To that end, the Government submits that it will disclose any additional Jencks material sufficiently in advance of trial to avoid delay and in accordance with any future pretrial order entered by this Court. (*Id.* at 8).

The Jencks Act and Federal Rule of Criminal Procedure 26.2 provide that after a Government witness testifies, and upon motion by the defendant, the Government must produce any statement of the witness in the possession of the United States that relates to the subject matter of the witness' testimony. 18 U.S.C. § 3500(b); Fed. R. Crim. P. 26.2(a); *United States v. Weaver*, 267 F.3d 231, 245 (3d Cir. 2001). As such, "the government has no obligation to produce Jencks

---

[4] As alluded to by the Government, the Court will establish deadlines for expert disclosures when it enters a pretrial order in this case.

material until the witness has testified." *United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012). Nevertheless, in this Court's experience, the Government typically is willing to disclose such material sufficiently in advance of trial to avoid delay and in accordance with the Court's pretrial order. *See id.* at 248 n.18 (observing that "[d]espite [§ 3500(a)], many federal prosecutors routinely turn over Jencks material a few days before the witness testifies"). Similar to other cases, the Court's pretrial order in this case will encourage the Government to provide Jencks Act materials prior to the pretrial conference. Given same, Defendant's Motion to Produce Pursuant to Rule 26.2 will be denied as premature and without prejudice.

### D. Motion to Dismiss for Violation of *Brady* Rule (Docket No. 391)

In his Motion to Dismiss for Violation of *Brady* Rule, Defendant asserts that, prior to his initial trial, he "came into possession of an affidavit [from Rico Taylor] that supposedly validated [his] claim of innocence." (Docket No. 391, ¶ 2). Defendant claims that he requested the Government to turn over transcripts of telephone calls between Taylor and another individual from a wiretap in a separate criminal case. (*Id.*, ¶ 4). According to Defendant, the evidence he requested from the Government "would go towards corroborating the statement made in the Taylor Affidavit." (*Id.*, ¶ 6). Ultimately, the Government turned over the requested audio calls and line sheets three days before trial, and Defendant submits that he "agreed not to make reference to them at trial." (*Id.*, ¶ 7; Docket No. 398 at 2, ¶ 1). Defendant now contends that the Government's "belated disclosure prevented [him] from properly litigating the matter concerning the affidavit[5] and ruined [his] defense . . . ." (Docket No. 391, ¶ 8). According to Defendant, the Government's

---

[5] Defendant initially sought admission of the Taylor Affidavit in a motion filed in July 2021. (Docket No. 196). In a Memorandum Opinion and Order dated September 15, 2021, Judge Ambrose denied Defendant's motion and ruled that the Taylor Affidavit was inadmissible hearsay, finding that "[it] is not 'supported by corroborating circumstances that clearly indicate its trustworthiness' as required by Rule 804(b)(3)(B)." (Docket No. 245 at 3-5).

"withholding the audio calls and line sheets prevented [him] from getting the Taylor Affidavit on the record." (Docket No. 398 at 2, ¶ 1). In Defendant's estimation, the Government suppressed evidence that was favorable to him, which prejudiced him, thereby amounting to a *Brady* violation that warrants dismissal of the Superseding Indictment. (Docket No. 391, ¶¶ 9-10).

The Government responds that Defendant suffered no due process violation because he had the opportunity to make use of the line sheets and audio calls at trial, but he chose not to do so. (Docket No. 396 at 10). According to the Government, Defendant's nearly four-year-old decision concerning his trial strategy precludes him from now credibly claiming that he suffered a due process violation. (*Id.*). Furthermore, the Government maintains that the audio calls and line sheets are not exculpatory or material. (*Id.*). Finally, the Government notes that Defendant is receiving a retrial, which is generally regarded as the remedial action most appropriate where an established *Brady* violation exists (although no such violation exists here). (Docket No. 400 at 3).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. . . ." *Id.* at 87. This includes both directly exculpatory evidence and impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

To establish a *Brady* violation, a defendant must show the following: "(1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." *United States v. Walker*, 657 F.3d 160, 185 (3d Cir. 2011) (quoting *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004)). Importantly, "*Brady* is not implicated if there is no prejudice to the

9

defendant." *United States v. Moreno*, 727 F.3d 255, 262 (3d Cir. 2013) (citing *United States v. Bansal*, 663 F.3d 634, 670 (3d Cir. 2011)); *see also United States v. Thomas*, No. 2015-0039, 2020 WL 3895770, at *7 (D.V.I. July 10, 2020) ("There can be no violation of *Brady* without a finding of prejudice.") (citation omitted). Consequently, "[w]here the government makes *Brady* evidence available during the course of a trial in such a way that a defendant is able effectively to use it, due process is not violated and *Brady* is not contravened." *Moreno*, 727 F.3d at 262.

The defendant bears the burden of establishing a *Brady* violation. *Maynard v. Gov't of the Virgin Islands*, 392 F. App'x 105, 119 (3d Cir. 2010) (citing *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005)). Defendant has not sustained that burden here. First, the record does not support Defendant's contention that "[i]t is evident a suppression occurred." (Docket No. 391, ¶ 10). Defendant acknowledges that the Government provided him the audio calls and line sheets three days before his first trial. (Docket No. 398 at 2, ¶ 1). Therefore, he has not established that this evidence was undisclosed under *Brady*. *See United States v. Schneider*, 801 F.3d 186, 202 (3d Cir. 2015) (finding that the defendant failed to establish that the evidence in question was suppressed because Government counsel emailed the evidence to defense counsel on the second day of trial and before the victim testified).

Next, Defendant does not appear to contend that the evidence in question is actually exculpatory as shown by his own statement that the transcripts of the calls "reflect that Taylor made statements from which interest in Watson's vehicle *can be inferred*." (Docket No. 391, ¶ 7) (emphasis added). Defendant's statement that an inference can be drawn from Taylor's statements signifies his recognition that the transcripts are not actually exculpatory.

10

Finally, *Brady* is not implicated here because there was no prejudice to Defendant. *See Moreno*, 727 F.3d at 262 (finding no *Brady* violation where evidence in question was disclosed to defense on the evening before trial because the defendant was able to use the documents at trial and suffered no prejudice as a result of the Government's allegedly untimely disclosure). As noted, Defendant received the audio calls and line sheets three days before trial. Defendant acknowledges that he "agreed not to make reference to [that evidence] at trial" because of "the belated disclosure." (Docket No. 391, ¶ 7). That was Defendant's decision concerning trial strategy. If Defendant required additional time to analyze that evidence and decide if he wanted to utilize it at trial, he could have requested a continuance of the trial but he apparently elected not to do so. (*See* Docket No. 289 at 9) (Defendant stating during 11/4/21 status conference, "I'm unwilling to mention or do anything regarding the Title III materials because I want the trial to go on as scheduled on November 8."). Under these circumstances, Defendant has not established a *Brady* violation,[6] and his Motion to Dismiss on that basis will be denied.

E. **Motion to Dismiss Indictment as Unconstitutional as Applied Pursuant to Rule 12(b) (Docket No. 392)**

In this Motion, Defendant contends that the Superseding Indictment should be dismissed because the Controlled Substances Act ("CSA") is unconstitutional as applied to him. (*See* Docket No. 392, ¶ 9) (stating that, "[t]he question is, since the CSA is a product of Congress carrying into effect the treaty, is the [CSA] unconstitutional as applied to Kevin Watson"). Despite his apparent

---

[6] Even if Defendant had established a *Brady* violation, he is receiving a retrial, which ordinarily is the remedy for such violation. *Gov't of the Virgin Islands v. Fahie*, 419 F.3d 249, 255 (3d Cir. 2005) ("While retrial is normally the most severe sanction available for a *Brady* violation, where a defendant can show both willful misconduct by the government, and prejudice, dismissal may be proper."). Defendant's vague reference to "the Government's willful misconduct" made for the first time in his Reply, (*see* Docket No. 398 at 3, ¶ 2), is unsupported by the record.

11

as-applied challenge, Defendant acknowledges that "the courts have been uniform in upholding the constitutionality of the federal drug trafficking statutes . . . based on Congress' Commerce Clause authority to bring validity to the CSA." (*Id.*, ¶ 2). As Defendant also acknowledges, "[i]t is undisputed that the CSA is a valid act." (*Id.*, ¶ 3).

In response, the Government notes that Defendant does not specify how the CSA is unconstitutional as applied to his 2019 possession with intent to distribute fentanyl and heroin. (Docket No. 396 at 11). In any event, the Government submits that Defendant's Motion should be denied because the CSA is a permissible exercise of congressional power under both the Commerce Clause and the Necessary and Proper Clause. (*Id.* at 11-13).

As an initial matter, an as-applied challenge requires a court to evaluate whether a statute's "application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Moore*, 111 F.4th 266, 272-73 (3d Cir. 2024) (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011)). Therefore, "[i]n order to mount a successful as-applied challenge, [Defendant] must show that under these particular circumstances he was deprived of a constitutional right." *Id.* at 273 (quoting *Mitchell*, 652 F.3d at 406). Here, Defendant has not explained how the CSA is unconstitutional *as applied to him under particular circumstances* – that is, his alleged possession with intent to distribute fentanyl and heroin on April 26, 2019. Defendant's failure in this regard dooms his as-applied challenge.

Moving on, as a sister court has observed, "[i]n the half century since the enactment of the Controlled Substances Act[,] courts have rejected countless challenges to its constitutionality. [Defendant's] challenges fare no better." *United States v. Bressi*, No. 4:19-CR-00207-01, 2024

WL 4112667, at *3 (M.D. Pa. Sept. 6, 2024). Relevant here, the Supreme Court has held that in enacting the CSA, Congress neither violated the Commerce Clause nor the Necessary and Proper Clause. *See Gonzales v. Raich*, 545 U.S. 1, 26 (2005) (rejecting challenge to CSA under the Commerce Clause "[b]ecause the CSA is a statute that directly regulates economic, commercial activity"). As the Supreme Court explained, "when it enacted comprehensive legislation to regulate the interstate market in a fungible commodity, Congress was acting well within its authority to 'make all Laws which shall be necessary and proper' to 'regulate Commerce . . . among the several States.' " *Id.* at 22 (quoting U.S. Const. art. I, § 8). To the extent Defendant invites this Court to rule contrary to well-established precedent that the CSA is a valid exercise of Congress' Commerce Clause power and its authority under the Necessary and Proper Clause, the Court declines to do so. Accordingly, Defendant Motion to Dismiss Indictment as Unconstitutional as Applied will be denied.

### III.    CONCLUSION

For the reasons discussed herein, Defendant's Pretrial Motions, (Docket Nos. 388-392), are DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date: July 31, 2025

cc/ecf:  All counsel of record

    Kevin Watson (via U.S. mail)
    Inmate No. 39594-068
    Northeast Ohio Correctional Center
    2240 Hubbard Road
    Youngstown, OH  44505